## Case No. 14,590.

UNITED STATES v. BICKET et al.

[16 Int. Rev. Rec. 85; 4 Chi. Leg. News, 452.]

District Court, N. D. Illinois. July Term, 1872.

INTERNAL REVENUE—ACTION ON DISTILLER'S BOND —ACTUAL PRODUCT — SURVEY—CAPACITY TAX —BACK TAXES—SURETIES—AGREEMENT.

1. If a distiller pays tax on the actual product of the distillery, even though that falls short of 80 per cent. of its estimated capacity, he cannot be made liable for a larger amount.

2. What is known as the "capacity tax," assessed under the thirteenth section of the act of July 20, 1868 [15 Stat. 130], does not come within this principle, but is in the nature of a license for the privilege of distilling in that establishment.

3. It is not a tax upon the product of the distillery, but a tax upon each distillery according to its capacity, and is therefore to be determined by its capability of producing according to the survey.

4. Where the period of fermentation has been fixed at forty-eight hours by the officers of the government upon survey, it is not a valid objection that the distillery uses a longer time in fermentation.

5. The survey and return having been made, the distiller has the right to appeal to the commissioner of internal revenue. If he does not do this, or if on appeal the survey is sustained, then his liability as to the capacity tax is inexorably fixed.

6. It then becomes a part of the license under which he operates, and it only remains for him to decide whether upon the conditions thus imposed he can undertake the business of distilling.

7. This court will not revise the survey made by the officers of the government, nor entertain objections founded upon the overestimated capacity of the distillery.

8. When at the time of the execution of the bond there were back taxes assessed against the distillery, and afterward moneys paid to the collector without specific appropriation were applied by him in liquidation of these back taxes, these moneys were rightly applied, and in a suit upon the bond cannot be set-off against taxes subsequently accrued.

9. It is the duty of the distiller and his sureties to see that the taxes are paid as they accrue, and if they are not paid government has its remedy upon the bond, even though the wines produced during the time the bond was in force may have been more than sufficient to pay the taxes.

10. The case is not analogous to suits upon collector's and receiver's bonds, they being public officers whose duty is to receive government moneys and pay them over to the government.

11. Nor is it a valid objection that at the time the sureties signed the bond the distillery was, by agreement between the distiller and his creditors, under the control of the trustee, who was

also a deputy collector, and who was to receive the proceeds of the wines and pay the expenses and taxes, and that he at the time agreed with the sureties that he would see to it that they were protected.

12. The government is not bound by any such agreement, nor is it competent for a public officer to vary or in any way change the terms of the distiller's bonds required by law; though such an agreement or pledge may bind him individually, it is as to the government inoperative and void.

At law.

BLODGETT, District Judge. This is an action upon a distiller's bond in the penal sum of $101,000, signed by the defendants William A. Bicket, George A. Sellars and Benjamin Buckley, and conditioned for the performance by Bicket of all the provisions of the law in relation to the duties and business of a distiller at Lodi, in this district, and for the payment of all penalties and fines imposed upon him for the violation of any provisions of the law applicable to him as such distiller. It is averred on the part of the plaintiff, that Bicket did not faithfully observe all the provisions of the law in regard to the duties of a distiller, in that he did not pay the tax which accrued against said distillery and upon the highwines manufactured by him therein, for the months of January, February, March and April, following the date of said bond amounting in the aggregate to $49,060.31.

It appears from the evidence in the case that the tax remaining unpaid is what is known as the deficiency tax, and the capacity tax on the distillery, and the barrel tax—the tax of fifty cents per gallon, the storekeeper's salary, and the special tax having been paid. It also further appears that the government has issued a distress warrant which was levied upon the property of Bicket, and from the sale of the property thus levied upon, the sum of $20,635 has been made, leaving a balance of $28,424.96. Of this sum $5,242.19 is what is called the "deficiency tax," that is to say, the tax which was assessed on the assumption that the distillery had produced 80 per cent. in highwines of its estimated capacity, it appearing that the difference in the tax between the actual product of the distillery and 80 per cent. of its estimated capacity amounts to this item of $5,242.19. In the decision rendered by my learned predecessor, Judge Drummond, some years since, upon the section of the statute under which this assessment is made (U. S. v. Singer [Case No. 16,292]), it was held that it could not have been the intention of congress to levy a tax upon wines which were not produced, which never had an existence, and that therefore if a distiller pays the gallon tax on the actual product of the distillery, he cannot be made liable for any larger amount to be assessed against its product, although he may fall short of producing 80 per cent. of the estimated capacity of the distillery, and following the rule laid down in that case, I shall deduct at once from this assessment the $5,242.19 deficiency tax, which leaves a balance of $23,182.77 for the consideration of the court.

It is shown by the proof on the part of the defendant, that a large proportion of this tax is what is known as the "capacity tax" and defendants insist that it comes within the same general principle as the "deficiency tax," and that the distiller ought not to pay a "capacity tax" on a greater amount of highwines than are actually produced. By the tenth section of the act of July 20, 1868 (15 Stat. 129), it is provided in substance that a survey shall be made by the assessor of each district, and some competent assistant, of the capacity of all distilleries within his district, and by the thirteenth section of the same act (15 Stat. 130), a tax of two dollars per day is imposed upon every distillery capable of mashing twenty bushels of grain in twenty-four hours, and a further tax of two dollars per day for every 20 bushels of additional mashing capacity of such distillery in excess of said first 20 bushels. It is urged on the part of the defendants in this case, that this distillery did not mash grain to the extent of the survey, and that therefore the capacity tax should be assessed in accordance with the quantity of grain actually mashed, and not in accordance with what the distillery was capable of mashing during the time it was in operation, and the counsel for defendants urged that the principle decided in the deficiency tax case should govern in regard to the capacity tax. But I am of the opinion that the capacity tax stands upon widely different grounds from the deficiency tax. The capacity tax seems to me to be a tax imposed in the nature of a license upon the distillery for the right or privilege of distilling in that establishment. It is not a tax like the deficiency tax, upon the product of the distillery, but it is a tax upon each distillery according to its capacity to produce, and is to be determined, not by the actual product of the distillery, but by what it is capable of producing, according to the survey.

It is also urged in the same connection that the capacity tax is not rightly assessed, because the officers of the government, in making the estimate for the purpose of determining the capacity tax, have assumed the period of fermentation at forty-eight hours, when in fact Bicket for a part of the time at least, while this bond was in force, used a fermenting period of seventy-two hours. By the rules of the department of internal revenue promulgated some time in 1869 for the government of distilleries and the assessment of taxes thereon, it is provided that the capacity shall be estimated upon the basis of forty-eight hours' fermentation; or, in other words, it is claimed for the defendants that this tax should be assessed upon the basis of the actual time used in fermentation, and that the court has a supervisory or controlling power over the assessment in this regard.

My understanding of the law is that when the officer whose duty it is to make the survey of the distillery makes his return, which must be before the distiller starts in the business of distilling, and fixes the fermentation period shorter than the distiller is satisfied that he can comply with, he has a right to appeal to the commissioner of internal revenue for a revision of the survey, and if he does not take an appeal; or if on taking an appeal the survey is sustained, then it seems to me his liability, so far as his capacity tax is concerned, is fixed. It falls into the same category of liabilities as the barrel tax, the special license tax, or any other fixed items which the distiller is bound to pay as a condition upon which he is to run his distillery, and it does not lie in the province of the court to revise the survey which is made by the officers of the government for the purpose of determining the capacity of the distillery. It is for the distiller to say after the survey whether he can afford to run under the survey, and upon the conditions thus imposed upon him, and if he cannot afford it he must not undertake the business of distilling; if he can afford it, then he must comply with the law in that regard, because the law fixes the capacity tax upon the survey being made as inexorably as it does the special license tax or the barrel tax. It becomes a part of the license which the distiller must pay for operating his distillery. I therefore come to the conclusion that this capacity tax must be sustained, and that the objections founded upon the alleged over-estimated capacity of the distillery, or the fact that the distillery used a longer fermenting period than that fixed by the survey, cannot be sustained by this court. The liability of the distiller for the payment of the tax was settled by the survey, and the court cannot revise it.

It is further urged as a defence in this case that during the time this distillery was running the moneys paid by the distiller to the government on account of taxes were applied to the payment of certain taxes which had accrued against the same distillery at a former time, and the facts bearing upon that portion of the defence seem to be substantially these: This distillery had been in operation prior to the execution of this bond, and there was a large amount of taxes then due from Bicket, who had run the distillery. After the distillery started under the bond in question a large amount of money was paid into the hands of the collector of internal revenue for the district without any specific appropriation by Bicket as to what account they should be applied upon, and the collector applied the moneys thus paid to him to the liquidation of the balance standing against Bicket for taxes which had accrued prior to the execution of this bond, and for the collection of which the collector held a warrant.

It is urged that the collector had no right to make this application, but that he should have applied the money upon the taxes which were accruing from time to time against the distillery under this bond, and the court has been cited to the cases of U. S. v. January, 7 Cranch [11 U. S.] 572; U. S. v. Giles, 9 Cranch [13 U. S.] 212; U. S. v. Ecford, 1 How. [42 U. S.] 250; U. S. v. Jones, 7 How. [48 U. S.] 681, and U. S. v. Linn [Case No. 15,606], in support of this position. But it will be noticed on examination that those suits were brought upon bonds given by public officers whose duty it was to receive government moneys and pay them over to the government. The money was at all times the money of the government, and the bond was given for the faithful performance by the receiving officer of the government of the duties of his office; one important duty of which was to pay to the government the money received in the due course of his official duty. Now if the money which the distiller received from the sales of his highwines belonged to the government these cases might be in point. But a distiller has the right to use the proceeds of his highwines for any purpose to which he chooses to apply them. He is under no obligation to sell his highwines if he chooses to pay his taxes from other resources. The bond of the distiller provides that he shall pay the duties upon the wines which are made at his manufactory, but I think it cannot be successfully claimed that after the distiller has sold the wines the proceeds are specifically chargeable with the payment of the tax. The distiller is not bound to pay the specific money which he receives, from the sale of the highwines, to the government. He may pay his taxes in other money. He may use or appropriate the proceeds of the distillery to the payment of the taxes, or he may rely upon other resources for that purpose as may best subserve his interest, and is not compelled to apply the specific moneys which he receives from the sales of his wines to the payment of the government duties. In other words, it is not the government money, therefore, I do not consider the cases referred to as controlling in this suit. The government relies upon the bond, and it is for the distiller and his surety to see to it that the taxes are paid as they accrue. These payments seem to have been made without any direction by Bicket, as to which account they should be applied upon, and come clearly within the familiar principle, that if a debtor owing the same creditor several debts makes a general payment without directing to which it shall be applied, the creditor may apply it as he pleases. The collector held several warrants against Bicket for taxes against this distillery, and as no appropriation was made by the debtor he had the right to apply the payments to the liquidation of the elder. For these reasons I do not think the defence upon that point is sustained by the authorities cited.

It is further claimed in connection with the same point that at the time the sureties signed this bond this distillery was in point of fact under the control of one Warren, who was also deputy collector of the district, as trustee by an agreement made between Bicket and certain of his creditors, by which Warren was to receive the proceeds of the wines manufactured, and pay the expenses of the distillery and taxes, and that at the time this bond was executed Warren told the sureties that he would see to it that they were protected; and it is urged that it was Warren's duty therefore to pay these taxes as they accrued out of the moneys which came into his hands from the sale of the highwines, and it undoubtedly was as between Warren and the owner of this distillery. Warren had undoubtedly accepted the trust, but government has nothing to do with any private arrangement which Warren made as to the trusteeship which he had accepted in relation to the business of this distillery. Government is not bound by the pledge which Warren made to the sureties in this bond at the time they signed the bond. It is not competent for a public officer to vary or in any way change the terms of the official bond or bonds which the law requires that a distiller should give as a condition precedent to his entering upon the business of a distiller. And further than that, the testimony offered upon this branch of the case is obnoxious to the fatal objection that it is an attempt to vary a written contract by parol testimony of the contemporaneous statements between the parties. But even if the contract between Warren and the surety had been in writing, it would have only bound Warren individually, and would not have bound the government. It was no part of his official duty to make such a stipulation as this, or in any way vary the terms of the distiller's bond, as fixed by law, and if he had attempted to do it. it would have been a gross violation of his duty, and would have been inoperative and void, even if he had done it in such a manner that the evidence could be read in court.

I am therefore constrained to overrule all the points of the defence, and render judgment for the amount shown by the evidence to be due upon this bond.